James N. Procter II – State Bar No. 96589
Lisa N. Shyer – State Bar No. 195238
PROCTER, SHYER & WINTER
751 East Daily Drive, Suite 410
Camarillo, California 93010
Phone: (805) 278-0920 /Facsimile: (805) 278-0289
Email:  jim@proctershyer.com / lisa@proctershyer.com

Attorneys for Attorneys for Defendants,
   CITY OF SANTA PAULA and OFFICER CHRIS
   RIVERA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| JOSEPH L. GARCES,<br><br>   Plaintiff,<br><br>vs.<br><br>CITY OF SANTA PAULA, a municipal entity, OFFICER CHRIS RIVERA, an individual and DOES 1 through 10, inclusive,<br><br>   Defendants. | CASE NO. 2:21-cv-6730-FLA(PVCx)<br><br>**DECLARATION OF DEFENDANT, SR. OFFICER CHRIS RIVERA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Concurrently filed with Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment]*<br><br>Date:  January 20, 2023<br>Time:  1:30 p.m.<br>Dept.:  6B |

I, Christopher Rivera, hereby declare and state:

1. I am an adult over the age of 18 years and the facts recited herein are within my personal knowledge. If called upon to testify to these facts, I could and would do so truthfully and competently.

2. Prior to preparing this declaration, I reviewed the body worn camera videos marked as Exhibits 1, 2, 3 and 4 to the defendant's motion for summary judgment to ensure the accuracy of the facts recited herein.

1

3. At the time of the subject incident, I was employed with the Santa Paula Police Department (SPPD) as a Senior Officer, assigned to the Detective Bureau.

4. On October 9, 2020, I was scheduled to begin my shift at approximately 5:00 p.m. At about 4:45 p.m. I was at the SPPD station located at 214 S. 10th Street in Santa Paula, California, preparing to start my shift, when a call came in that there was a shooting victim on the ground in the parking lot of an apartment complex at 218 N. 8th Street.

5. I immediately responded to the call in an unmarked police vehicle, accompanied by SPPD Officers Jason Abboud and Evert Ponce. We arrived at the scene of the incident at approximately 4:55 p.m.

6. Upon my arrival at the scene, I was met by SPPD Commander Allen Macias, who had arrived a few minutes earlier. Commander Macias confirmed that I was the lead detective on the scene, until relieved by Detective McCarthy, and that there was a shooting victim down. He advised me that someone (whom I later learned was Joseph Garces) had been performing CPR on the victim. By the time I arrived on scene, SPPD Ofc. Chennault was performing chest compressions on the victim.

7. Commander Macias also told me that the person who had been performing CPR, Mr. Garces, had removed a handgun from the victim and placed it in his Jeep, which was parked a few feet away from the victim. At that time, I had no information regarding the incident other than what I had been told by Commander Macias and what I was able to observe in the short time I was on scene.

8. I did not know if the suspect was still in the vicinity, and I had not yet identified any potential witnesses.

9. After the briefing I received from Commander Macias, I observed SPPD Sgt. Walter Harper a short distance away speaking to the individual whom I later learned was Joseph Garces.

10. Knowing that Mr. Garces was in the crime scene I asked Sgt. Harper to "Get him out of here." Mr. Garces immediately became emotional, agitated, angry and aggressive, as shown in the video marked Exhibit 1.

11. I immediately identified myself as a detective in charge of the crime scene. However, Mr. Garces continued to shout obscenities and challenging me. I then ordered him out of the crime scene. He responded by asking, "What's your f***ing name?"

12. After I told him my name, I walked over to Mr. Garces ordered him to leave the crime scene two more times. He did not immediately comply. Instead, he was defiant and asked, "What are you going to do to me?"

13. I then ordered Mr. Garces out of the crime scene two more times and told him that I would make him leave. Sgt. Harper then encouraged Mr. Garces to go with him and the two men began walking toward 8th Street.

14. As Mr. Garces was walking away with Sgt. Harper, he continued shout profane insults at me, repeatedly yelling different versions of the F-word.

15. By this time, the perimeter of the crime scene had been established with yellow crime scene tape. The crime scene tape had been tied to a utility pole on the west sidewalk on 8th Street, stretched across 8th Street to the east side of the street and then southward down 8th Street as shown on Ex. 1 at about 4:56 p.m.

16. When Mr. Garces reached the sidewalk on 8th Street he stopped, turned around, and began walking back toward the interior crime scene, and continued shouting insults at me, calling me a "..fat mother***ing piece of s***."

17. By this time, I was very concerned about Mr. Garces's emotional stability and the effect his behavior was having on potential witnesses, as well as the disruptive effect he was having on the overall investigation. I began to walk toward Mr. Garces.

18. As I approached 8th Street, I heard Sgt. Harper repeatedly order Mr. Garces to "step back." Mr. Garces did not comply with these orders but continued shout profane insults at me.

3

19. As I continued to walk toward Mr. Garces, I heard Ofc. Ponce instruct him, "I need you to back up!" three times in a firm tone of voice. Mr. Garces responded with an emphatic, "No!"

20. At this point, I placed my right hand on Mr. Garces's right shoulder and said, "I got him, I got him, I got him…" and then said to him, "You need to understand…"

21. Before I was able to finish my sentence, Mr. Garces stated, "Get your f***ing hands off me" and raised his right arm up as I was trying to get his attention. I then placed Mr. Garces in a wrist hold and walked him over to a tree just outside the crime scene.

22. I did not strike Mr. Garces, nor did I use or display my baton, taser or any other weapon to subdue him. I do not believe that I applied a sufficient amount of force to his right hand or arm to cause a physical injury.

23. I then attempted to convince Mr. Garces to calm down, as shown on Exhibit 3. However, he continued to argue with me and challenge my authority.

24. Knowing that I had a dynamic and rapidly evolving crime scene on my hands and confronted with his strange, aggressive and belligerent behavior, I decided to handcuff and detain Mr. Garces at approximately 4:58:21 PM. (See Exhibit 3, 00:49; T23:57:44). I did so because I reasonably believed that I had probable cause to arrest him for a violation of California Penal Code section 148(a)(1) and that his detention was legally justified because he was delaying, interfering with, and obstructing an urgent investigation.

25. My direct interaction with Mr. Garces ended at approximately 4:59 p.m. and Ofc. Abboud placed Mr. Garces in a patrol vehicle parked nearby. At no time during my interaction with Mr. Garces did he appear to be in pain, and he did not complain to me of any injuries, nor did he request that I summon medical attention for him.

26. At approximately 5:00 p.m., I contacted Commander Macias again to obtain additional information regarding the investigation and to try to determine Mr. Garces's role in the incident. Commander Macias told me that Mr. Garces was a retired firefighter who had stopped at the scene to render first aid and had removed a handgun from the victim's waistband and placed it on the floorboard of his Jeep. At this point I was satisfied that Mr. Garces was not involved in the shooting and that he was a witness.

27. At approximately 5:05:39 p.m., I contacted Det. Ramirez and asked him to take a statement from Mr. Garces and then release him. (See, Exhibit 4, T00:05:39).

28. At no time during this incident did I have any intent to deprive Mr. Garces of his civil rights.

29. When I placed Mr. Garces in a wrist hold, I used only the amount of force I believed was reasonably necessary to obtain his compliance and prevent him from further obstructing and delaying my investigation.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration is true and correct

Executed this 13th of December 2022 at Santa Paula, California.

_____
Christopher Rivera

5

**STATE OF CALIFORNIA, COUNTY OF VENTURA**

I am employed in the County of Ventura, State of California. I am over the age of 18 and not a party to the within action. My business address is 751 East Daily Drive, Suite 410, Camarillo, California 93010.

On December 14, 2022, I served the foregoing document(s) described as: **DECLARATION OF DEFENDANT, SR. OFFICER CHRIS RIVERA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

on the interested parties in this action by:

__X__ By **CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the documents with the clerk of the court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules. **SEE ATTACHED SERVICE LIST**

____ **(BY E-MAIL)** I served the foregoing document by transmitting a true copy thereof via e-mail as follows: **SEE ATTACHED SERVICE LIST**

__X__ **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 14, 2022, at Camarillo, California.

/s/
_____
Shellye Cruz

# SERVICE LIST

**Garces v. City of Santa Paula**
United States District Court Case No: 2:21-cv-6730-FLA(PVCx)

Edward M Lyman, III
Cochran Firm California
4929 Wilshire Boulevard Suite 1010
Los Angeles, CA 90010
323-435-8205 / Fax: 323-282-5280
Email: elyman@cochranfirm.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Brian T Dunn
Cochran Firm California
4929 Wilshire Boulevard Suite 1010
Los Angeles, CA 90010
323-435-8205 / Fax: 323-282-5280
Email: bdunn@cochranfirm.com
ATTORNEY TO BE NOTICED

Gregory J Ramirez
Law Offices of Gregory Ramirez
220 South A Street Suite 1
Oxnard, CA 93030-5762
805-483-1090 \ Fax: 805-228-4669
Email: gramirez@gjramirezlaw.com
ATTORNEY TO BE NOTICED