1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11 | JOSEPH L. GARCES,                    | Case No. 2:21-cv-06730-FLA (PVCx)
12 |                    Plaintiff,         | **ORDER GRANTING IN PART AND**
13 |          v.                          | **DENYING IN PART DEFENDANTS'**
14 |                                       | **MOTION FOR SUMMARY**
15 | CITY OF SANTA PAULA, et al.,          | **JUDGMENT [DKT. 28]**
16 |                    Defendants.        |
17
18
19
20
21
22
23
24
25
26
27
28

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## RULING

Before the court is Defendants the City of Santa Paula (the "City") and Officer Chris Rivera's ("Officer Rivera") Motion for Summary Judgment ("Motion").  Dkt. 28 ("Mot.").  Plaintiff Joseph L. Garces ("Garces") opposes the Motion.  Dkt. 33 ("Opp'n").[1]

On January 17, 2023, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for January 20, 2023.  Dkt. 36; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.  For the reasons stated herein, the court GRANTS in part and DENIES in part Defendants' Motion.

## BACKGROUND

On October 9, 2020, at approximately 4:45 p.m., a man was shot in the parking lot of an apartment complex in Santa Paula, California.  Dkt. 30, Defendants' Statement of Uncontroverted Facts ("DSUF") No. 1.  Moments later, Plaintiff, a retired firefighter, happened upon the scene of the shooting while driving his Jeep northbound on a road adjacent to the parking lot. *Id.* No. 2.  Plaintiff immediately went to the victim and, as he was preparing to render first aid, discovered a handgun in the victim's waistband. *Id.* No. 3.  He immediately took the handgun out of the victim's waistband, released the magazine, and placed both the handgun and the magazine on the floor of his Jeep. *Id.*  He then returned to the victim and began performing chest compressions. *Id.*

Officer Rivera and other officers from the Santa Paula Police Department ("SPPD") arrived on scene at approximately 4:55 p.m. *Id.* No. 8.  One of the officers relieved Plaintiff and took over the chest compressions, and another officer began

---

[1] Defendants ask the court to treat their Motion as unopposed because Plaintiff filed his opposition papers late.  Dkt. 35 at 5-6.  As Defendants do not point to any prejudice resulting from Plaintiff's late filing, the court in its discretion considers Plaintiff's opposition papers for the purposes of deciding this Motion.  The court notes, however, that future late-filed briefs may be stricken and disregarded.

interviewing Plaintiff.  *Id.* Nos. 10-11.  At some point, Officer Rivera told the officer interviewing Plaintiff to "Get this guy out of here."  *Id.* No. 17.  This prompted a heated verbal exchange between Plaintiff and Officer Rivera, with Officer Rivera telling Plaintiff to leave and Plaintiff insisting that he was helping.  Dkt. 32, Plaintiff's Statement of Genuine Disputes of Material Fact and Additional Uncontroverted Facts ("PSUF") No. 17.

Eventually, Plaintiff walked out of the parking lot onto the sidewalk of the adjoining street, turned to face the parking lot, and shouted a few profanities.  DSUF No. 19.  Another officer told Plaintiff to "back up" and turned Plaintiff around so that he was again facing away from the parking lot.  *Id.* No. 21; Dkt. 29, Ex. 1 ("Harper Bodycam") at 3:22-3:29.  Plaintiff took a few steps away from the parking lot, and at this point, Officer Rivera walked up to Plaintiff and placed his left hand on Plaintiff's right shoulder.  DSUF No. 22; Harper Bodycam at 3:29-3:30.  Plaintiff moved his right arm away from Officer Rivera and told him to "Get your fucking hands off me."  DSUF No. 23; Harper Bodycam at 3:30-3:32.  In response, Officer Rivera immediately grabbed Plaintiff's right arm, wrenched it behind Plaintiff's back, and "C-clamped" Plaintiff's forearm and elbow.  DSUF No. 23; PSUF No. 23; Harper Bodycam at 3:31-3:32.  Officer Rivera then walked Plaintiff several feet away to a nearby tree.  DSUF No. 23.  After the two continued to exchange words, Officer Rivera decided to detain Plaintiff and proceeded to place him in handcuffs.  *Id.* No. 25.

At approximately 5:00 p.m., another officer put Plaintiff in the back of a patrol car.  *Id.* No. 27; Dkt. 29, Ex. 3 ("Abboud Bodycam") at 2:00-2:30.  While Plaintiff was in the patrol car, Officer Rivera stated, "he wanted to get stupid, so, he's getting sunk right now."  PSUF No. 38; Dkt. 29, Ex. 4 ("Ramirez Bodycam") at 12:10-12:12.  At approximately 5:15 p.m., Officer Rivera uncuffed Plaintiff and Plaintiff was free to

1   leave.  DSUF Nos. 34-35.  Some time afterwards, Plaintiff requested emergency

2   medical services and a police officer called an ambulance for him.[2]  *Id.* No. 36.

3   **DISCUSSION**

4   **I.   Legal Standard**

5          Summary judgment is appropriate where "there is no genuine dispute as to any

6   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

7   P. 56(a).  The moving party bears the initial burden of identifying relevant portions of

8   the record that demonstrate the absence of a fact or facts necessary for one or more

9   essential elements of each claim upon which the moving party seeks judgment.

10  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Facts are "material" only if a

11  dispute about them may affect the outcome of the case under applicable substantive

12  law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a

13  material fact is "genuine" if the evidence is such that a reasonable jury could return a

14  verdict for the nonmovant.  *Id.*

15         If the moving party meets its initial burden, the opposing party must then set out

16  specific facts showing a genuine issue for trial to defeat the motion.  *Anderson*, 477

17  U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c), (e).  Summary judgment must be

18  granted for the moving party if the nonmoving party "fails to make a showing

19  sufficient to establish the existence of an element essential to that party's case, and on

20  which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The

21  court must decide whether the moving party is entitled to judgment as a matter of law

22  in light of the facts presented by the nonmoving party, along with any undisputed

23  facts.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-

24  _____

25  [2] Defendants object to several statements in Plaintiff's opposition brief describing the

26  injuries Plaintiff sustained.  Dkt. 35-2.  Plaintiff, however, did not include these

27  statements in his statement of additional material facts, and the court does not rely on
    them in deciding the present motion.  The court, therefore, overrules Defendants'

28  objections as moot.

1   31 & n. 3 (9th Cir. 1987).  "Where the record taken as a whole could not lead a

2   rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

3   trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4          When deciding a motion for summary judgment, "the inferences to be drawn

5   from the underlying facts … must be viewed in the light most favorable to the party

6   opposing the motion."  *Id.*  "If the nonmoving party produces direct evidence of a

7   material fact, the court may not assess the credibility of this evidence nor weigh

8   against it any conflicting evidence presented by the moving party.…  Inferences from

9   the nonmoving party's 'specific facts' as to other material facts, however, may be

10  drawn only if they are reasonable in view of other undisputed background or

11  contextual facts and only if such inferences are otherwise permissible under the

12  governing substantive law."  *T.W. Elec.*, 809 F.2d at 631-32.  "[S]ummary judgment

13  should not be granted where contradictory inferences may reasonably be drawn from

14  undisputed evidentiary facts…."  *Hollingsworth Solderless Terminal Co. v. Turley*,

15  622 F.2d 1324, 1335 (9th Cir. 1980).  The nonmoving party, however, must not

16  simply rely on the pleadings and must do more than make "conclusory allegations [in]

17  an affidavit."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also*

18  *Celotex*, 477 U.S. at 324.

19  **II.     Analysis**

20          **A.      Fourth Amendment Claim Against Officer Rivera**

21                  *1. Excessive Force*

22          Plaintiff argues that Officer Rivera violated his Fourth Amendment rights by

23  using excessive force to "C-clamp" his right arm and handcuff him.  Opp'n at 11-14,

24  17.  "An excessive force claim is a claim that a law enforcement officer carried out an

25  unreasonable seizure through a use of force that was not justified under the relevant

26  circumstances."  *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017).  Courts

27  evaluate the reasonableness of a particular use of force under an objective standard

28  and consider "the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In *Graham*, 490 U.S. at 396, the Supreme Court identified three nonexhaustive factors for evaluating the reasonableness of the use of force: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  "Ultimately, the most important *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others."  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (cleaned up).  "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is 'a question of fact best resolved by a jury.'"  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Defendants argue that Officer Rivera justifiably sought to detain Plaintiff because Plaintiff was disrupting an ongoing criminal investigation in violation of California Penal Code section 148(a)(1).  Mot. at 15-17.  Plaintiff responds that Officer Rivera had a retaliatory motive in detaining Plaintiff, and that Officer Rivera used force in a situation that did not call for it.  Opp'n at 17-21.

Officer Rivera's motive in using force to detain Plaintiff has no bearing on the reasonableness of his use of force.  *See Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").  Whatever Officer Rivera's motive, a jury viewing the evidence in a light most favorable to Plaintiff may still conclude that Officer Rivera's use of force was excessive.  First, it is unclear if Plaintiff was violating California Penal Code section 148(a)(1) at the time Officer Rivera used force on Plaintiff, but even if he were, Plaintiff's alleged verbal disruption of Officer Rivera's investigation does not constitute a particularly serious crime.  Second, Defendants do not present evidence or otherwise claim that Plaintiff posed an immediate threat to the safety of the officers or others.  Third, a jury reviewing the

6

evidence could easily find that Plaintiff did not resist or make any attempt to evade detention or arrest.  Although bodycam footage shows Plaintiff moving his arm away when Officer Rivera first placed his hand on Plaintiff's shoulder, it does not show Plaintiff reacting to Officer Rivera's subsequent attempt to pull his arm behind his back.  Harper Bodycam at 3:30-3:32.

Importantly, Officer Rivera never announced that he was detaining or arresting Plaintiff, and a factfinder could determine that a reasonable officer seeking Plaintiff's compliance would have made such an announcement and asked Plaintiff to put his arm behind his back before forcibly C-clamping it.  *See Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1050 (9th Cir. 2014) ("Also relevant to the excessive force inquiry is what other tactics if any were available to effect the arrest." (citations and internal quotation marks omitted)).  The court, therefore, declines to grant Defendants' Motion for Summary Judgment on the basis that Officer Rivera did not use excessive force.

### 2.  Qualified Immunity

Qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  Qualified immunity is analyzed under a two-prong inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236.  First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]" *Id.*  Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.*  "[W]hether a constitutional right was violated ... is a question of fact," and "whether the right was clearly established ... is a question of law." *Tortu v. Las Vegas Metro. Police Dep't*, 556 U.S. 1075, 1085 (9th Cir. 2009).  "The plaintiff bears the burden of showing that the right at issue was clearly established under this second

prong." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  A plaintiff does not need to cite a case directly on point, but he must refer to existing precedent that has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Defendants argue that even if there is a triable issue as to whether Officer Rivera violated Plaintiff's Fourth Amendment right not to be subjected to excessive force, Officer Rivera, nevertheless, is entitled to qualified immunity because "[a] review of Ninth Circuit and Supreme Court decisions reveals that there are no reported cases holding that the restraint of an unruly individual under these circumstances violates a clearly established statutory or constitutional right."  Mot. at 20.  Plaintiff concedes that "no prior Supreme Court or circuit case presents facts that are 'fundamentally similar' or 'materially similar' to those presented here" but asserts that "the state of the law ... gave [defendants] fair warning that their alleged treatment of [him] was unconstitutional."  Opp'n at 22 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Plaintiff, relying on *Atencio v. Arpaio*, 674 F. App'x 623, 626 (9th Cir. 2016), argues that officers are not entitled to qualified immunity when they place a suspect in a "wrist lock."  Opp'n at 24.  In *Atencio*, however, the Ninth Circuit did not hold that clearly established law prohibited the use of a "wrist lock."  Rather, it stated that "there was clearly established precedent that would have made it sufficiently clear to reasonable officials" that holding a suspect down in a "dog pile," tasering him three times, and striking him repeatedly violated the suspect's Fourth Amendment rights. *Atencio*, 674 F. App'x at 625.  The court then went on to hold that qualified immunity did not protect an officer who only used a "wrist lock" on the suspect because "his wrist lock was instrumental in controlling [the suspect], which allowed the other officers to commit the excessive force against him."  *Id.* at 626.

Unlike the officer's use of a "wrist lock" in *Atencio*, Officer Rivera's "C-clamp" of Plaintiff's right arm did not lead to a subsequent use of force that has been

clearly established as violative of the Fourth Amendment. *Atencio* is, therefore, inapposite. Although a jury could ultimately find that Officer Rivera's use of a "C-clamp" in this situation was unconstitutional, Plaintiff has not met his burden of showing that Officer Rivera's actions violated a clearly established right. *See City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (cautioning against "defin[ing] the clearly established right at a high level of generality by saying only that the 'right to be free of excessive force' was clearly established"). The court, therefore, determines that Officer Rivera is entitled to qualified immunity and GRANTS Defendants' Motion for Summary Judgment on Plaintiff's first claim.

## B.     State Law Claims Against Officer Rivera and the City

### 1.  Bane Act

The Bane Act provides a private cause of action against any person who, "whether or not acting under color of law, interferes by threat, intimidation, or coercion … with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (quotation omitted).

Defendants assert that Officer Rivera "harbored no 'specific intent' to deprive [Plaintiff] of his rights." Mot. at 23. The record, however, contains evidence from which a jury could find that Officer Rivera not only had a general intent to pull Plaintiff's arm behind his back to detain or arrest him, but also a specific intent to use excessive force in violation of Plaintiff's constitutional rights. A jury viewing footage of the verbal altercation between Officer Rivera and Plaintiff, for example, could infer a retaliatory motive and corresponding specific intent in Officer Rivera's subsequent

use of force.  A jury could also come to the same conclusion after considering Officer Rivera's comment that Plaintiff "wanted to get stupid, so, he's getting sunk right now."  The court, therefore, DENIES Defendants' Motion for Summary Judgment on Plaintiff's second claim.

### 2. Battery

Under California law, a claim for battery "against a police officer effectuating an arrest requires a showing that the officer used unreasonable force."  *Dang v. City of Garden Grove*, Case No. 8:10-cv-00338-DOC (MLGx), 2011 WL 3419609, at *11 (C.D. Cal. Aug. 2, 2011).  "The test employed under California law to determine if the force used was unreasonable is identical to the test employed under federal law applying Section 1983."  *Id.*

Having concluded that Plaintiff's Fourth Amendment claim for excessive force raises a genuine dispute of material fact, the court cannot decide Plaintiff's battery claim on summary judgment.  The court, therefore, DENIES Defendants' Motion for Summary Judgment on Plaintiff's third claim.

### 3. Negligence

The elements of a negligence cause of action are "(1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care."  *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1209 (E.D. Cal. 2008) (citations omitted).

Defendants contend summary judgment is appropriate because Officer Rivera "acted reasonably as a matter of law throughout this incident" and that "his use of force ... was reasonable."  Mot. at 24.  As discussed above, however, a determination of the reasonableness of Officer Rivera's action requires the resolution of a genuine dispute of material fact.  The court, therefore, DENIES Defendants' Motion for Summary Judgment on Plaintiff's fourth claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's first claim and DENIES Defendants' Motion for Summary Judgment as to Plaintiff's remaining claims.

IT IS SO ORDERED.

Dated: March 24, 2023

FERNANDO L. AENLLE-ROCHA
United States District Judge